996 F.2d 1224
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jack DESWART, Plaintiff-Appellant,
v.
TILLAMOOK COUNTY, a political subdivision of the State of
Oregon, and David Wilson, Sheriff of Tillamook
County, Defendants-Appellees.
 No. 92-36731.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 8, 1993.*
Decided June 18, 1993.
 
 Before CANBY, FERNANDEZ and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Jack DeSwart appeals the district court's summary judgment for defendant Tillamook County Sheriff David Wilson in DeSwart's 42 U.S.C. § 1983 action alleging he was terminated from his position as a volunteer reserve deputy without due process. DeSwart contends the district court erred by finding Sheriff Wilson protected from suit under the doctrine of qualified immunity. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.
 
 
 3
 We review de novo the district court's grant of summary judgment. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990). Summary judgment is appropriate if the evidence, construed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fu-Kong Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). General or conclusory allegations will not withstand a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989).
 
 
 4
 Here, DeSwart worked for a number of years as a volunteer "reserve" or "special" deputy for the Tillamook County Sheriff's office pursuant to Or.Rev.Stat. §§ 204.601 and 204.635.[1] In December of 1989, DeSwart was cited by a Weighmaster in Oregon for driving an oversized load. Subsequently, an agent for the Weighmasters filed a complaint with the Sheriff's department alleging that DeSwart had abused his status as a special deputy in an attempt to avoid a citation. On January 5, 1990, Sheriff Wilson met with agents for the Weighmasters. Shortly following the meeting, and without giving DeSwart notice or an opportunity to respond to the charges, Wilson terminated DeSwart's position with the Sheriff's office.
 
 
 5
 On November 11, 1991, DeSwart brought this action against Tillamook County and Sheriff Wilson, alleging that Sheriff Wilson had violated his constitutional rights by discharging him without due process of law. He filed an amended complaint on February 26, 1992. On June 30, 1992, defendants filed a motion for summary judgment. On August 28, 1992, the district court granted summary judgment for defendants. The court found that DeSwart had conceded Tillamook County was not liable.[2] The court also found that defendant Wilson was protected from suit by qualified immunity. DeSwart timely appeals.
 
 
 6
 DeSwart contends Wilson is not entitled to qualified immunity. DeSwart contends he had a clearly established property interest in continued employment under Oregon state law. DeSwart further contends the district court erred by granting defendant summary judgment because the determination of whether Sheriff Wilson acted reasonably when he terminated DeSwart's position was a question of fact for a jury to resolve. These contentions lack merit.
 
 
 7
 Government officials executing discretionary functions are protected by qualified immunity unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Floyd v. Laws, 929 F.2d 1390, 1393 (9th Cir.1991) (citation omitted). This determination involves an "objective, fact-specific test." Id. The proper question is "whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed five years after the fact." Hunter v. Bryant, --- U.S. ----, 112 S.Ct. 534, 537 (1991). The district court should rule on issues of immunity long before the action comes to trial. Id.
 
 
 8
 The Fourteenth Amendment ensures that no one may be deprived of property or liberty without due process of law. Brady v. Gebbie, 859 F.2d 1543, 1547 (9th Cir.1988), cert. denied, 489 U.S. 1100 (1989) (citing Carey v. Piphus, 435 U.S. 247, 259 (1978)). A constitutionally protected property interest in continued employment exists only if the employee has a "reasonable expectation or a 'legitimate claim of entitlement to it.' " Id. at 1547-48 (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)).
 
 
 9
 State law defines the parameters of what constitutes a reasonable expectation of continued employment. Id. at 1548. An employee serving at the will of his employer cannot claim a constitutionally protected property right in his continued employment. Id. Nevertheless, state law creates a reasonable expectation of continued employment if it restricts the grounds on which the employer may terminate his employees. Id.
 
 
 10
 Under Oregon law, an employer may discharge an employee at any time and for any reason as long as there is no contract or statute restricting the employer's right to do so. Zacker v. North Tillamook County Hosp. Dist., 811 P.2d 647, 649 (Or.Ct.App.), review denied, 817 P.2d 758 (1991).
 
 
 11
 Policy manuals, county civil service rules and collective bargaining agreements all may modify an at-will employment relationship. Zacker, 811 P.2d at 648; Graves v. Arnado, 768 P.2d 910, 913 (1989). "Personnel policy manuals can create contractual obligations" between an employer and an employee. Zacker, 811 P.2d at 648. A policy manual, however, does not restrict an employer's right to terminate an at-will employment relationship unless it outlines non-discretionary procedures for the employer. Id. at 649. Similarly, an employee appointed to serve "at the pleasure" of a county official pursuant to Or.Rev.Stat. §§ 204.601(2) and 204.635(1) remains an "at-will" employee in the absence of county civil service rules and collective bargaining agreements. Graves, 768 P.2d at 913.
 
 
 12
 Here, DeSwart concedes he was appointed deputy by the Sheriff under Or.Rev.Stat. §§ 204.601(2) and 204.635(1), thereby making him an at-will employee.[3] Nothing which transpired during DeSwart's tenure restricted the Sheriff's right to terminate DeSwart at-will. The Sheriff's department never adopted county civil service rules. See id. In addition, although "regular" deputies were part of a collective bargaining agreement which specifically restricted the ability of the Sheriff's department to fire regular deputies at-will, DeSwart was not covered by that agreement. See id.
 
 
 13
 DeSwart contends that two policy manuals which he received during his tenure at the Sheriff's Office modified his at will employment relationship. A lieutenant in the Sheriff's Office gave DeSwart a copy of the "Reserve Handbook" in 1985. DeSwart received a copy of the "Sheriff's Office Policy and Procedure Manual" in 1989. Both of these manuals governed Sheriff's Office employees and contained sections describing office policy regarding disciplinary violations. Although the Reserve Handbook suggested what form disciplinary measures might take, the manual did not restrict the authorities' discretion for imposing discipline. See Brady, 859 F.2d at 1548. In addition, Wilson never formally adopted the Reserve Handbook, and both parties concede Wilson was not aware that DeSwart had received a copy.
 
 
 14
 Finally, although the Sheriff's Office Policy and Procedure Manual lays out very specific disciplinary procedures, the chapter on discipline refers only to "members." Wilson attested before the court that he understood the portions regarding disciplinary procedure in that manual not to apply to reserve or special deputies. This manual, then, did not create a clearly established statutory or constitutional right of which a reasonable person would have known. See Floyd, 929 F.2d at 1393.
 
 
 15
 Thus, DeSwart did not have a clearly established property interest in his position under Oregon or under Constitutional law, see Brady, 859 F.2d at 1547-48, and Sheriff Wilson acted reasonably by terminating DeSwart on the assumption that DeSwart could be fired at-will, see Hunter, 112 S.Ct. at 537; Floyd, 929 F.2d at 1393.
 
 
 16
 Accordingly, the district court did not err by granting summary judgment for defendant Wilson. See Bagley, 988 F.2d at 871; Fu-Kong Tzung, 873 F.2d at 1339-40.
 
 
 17
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Or.Rev.Stat. § 204.601 provides:
 (1) The county court or board of county commissioners of each county shall fix the number of deputies and employees of county officers whose compensation is to be paid from county funds.
 (2) All such deputies and employees shall be appointed by such county officer, and shall hold office during the pleasure of the appointing officer.
 Or.Rev.Stat. § 204.635 provides in relevant part:
 (1) A sheriff's deputies shall be appointed by the sheriff in writing and continue during the pleasure of the sheriff.
 
 
 [2]
 DeSwart does not appeal the court's findings on this issue
 
 
 [3]
 DeSwart worked for the Sheriff's office one night each week. DeSwart did not get paid or receive employment benefits for his work with the Sheriff's department. Occasionally, the Sheriff's office would refer DeSwart paid assignments as a security guard for special events. During the week, DeSwart pursued his regular business driving a hay truck